IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Glenn Pernell, | ) | C/A No. 0:14-4101-JMC-PJG |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Warden Perry Corr. Inst., | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Petitioner Glenn Pernell, a self-represented state prisoner, filed this petition for a writ of

habeas corpus pursuant to 28 U.S.C. § 2254. This matter comes before the court pursuant to 28

U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on

the respondent's motion for summary judgment. (ECF No. 32.) Pursuant to Roseboro v. Garrison,

528 F.2d 309 (4th Cir. 1975), Pernell was advised of the summary judgment and dismissal

procedures and the possible consequences if he failed to respond adequately to the respondent's

motion. (ECF No. 34.) Pernell filed a response in opposition to the respondent's motion. (ECF No.

49.) Having carefully considered the parties' submissions and the record in this case, the court

concludes that the respondent's motion for summary judgment should be granted and Pernell's

Petition denied.

## BACKGROUND

Pernell was indicted in November 2006 in Marion County on a multiple count indictment

for (1) distribution of cocaine base, (2) trafficking in cocaine, (3) possession of cocaine with intent

to distribute within proximity of a school or park, (4) trafficking in cocaine base, and (5) possession

of cocaine base with intent to distribute within proximity of a school or park (2006-GS-33-297).

(ECF No. 33-3 at 54-6.)  Pernell was represented by J.M. Long, III, Esquire, and on February 27, 2007 was tried on Counts Two through Five[1] before a jury and found guilty of Count 2 and Count 4—trafficking in cocaine and trafficking in cocaine base.  (App. at 327-28, ECF No. 33-2 at 128-29.) The circuit court sentenced Pernell to twenty-five years' imprisonment for each count of trafficking, the sentences to run consecutively.  (ECF No. 33-2 at 143.)

Pernell timely appealed and continued to be represented by J.M. Long, III, Esquire, who filed a brief on Pernell's behalf that presented the following issues:

I.      Did the trial court err in allowing testimony and evidence concerning a distribution charge, which was not called for trial, and was said evidence prejudicial to Appellant?

II.     Did the trial court err in allowing testimony and evidence concerning Appellant's simple possession of marijuana, and was said evidence prejudicial to Appellant?

III.    Did the trial court err in permitting testimony concerning an alleged possession of a firearm by Appellant?

IV.     Did the trial court err in denying Appellant's motions for a directed verdict, motion for a new trial, and post trial motions?

V.      Did the trial court err in sentencing Appellant to consecutive twenty five year sentences for drug violations that occurred simultaneously, and in failing to grant Appellant's motion to reconsider sentence?

(ECF No. 33-5.)  By Order filed July 20, 2009, the South Carolina Court of Appeals affirmed the decision of the circuit court.  (State v. Pernell, Op. No. 09-UP-394 (S.C. Ct. App. July 20, 2009); ECF No. 33-7.)  The remittitur was issued on August 7, 2009.  (ECF No. 33-8.)

Pernell, through counsel Tynika Claxton, Esquire, filed an application for post-conviction relief ("PCR") on December 14, 2009 in which he raised a claim of ineffective assistance of counsel.

---

[1] Count One was dismissed with leave to restore.



(See <u>Pernell v. State of South Carolina</u>, 09-CP-33-527; App. at 345-50, ECF No. 33-2 at 146-51.)

On February 9, 2011, the PCR court held an evidentiary hearing at which Pernell appeared and

testified.  By order filed March 11, 2011, the PCR court denied and dismissed with prejudice

Pernell's PCR application.  (App. at 394-400, ECF No. 33-2 at 195-201.)

On appeal, Pernell was represented by Wanda H. Carter, Esquire, Deputy Chief Appellate

Defender with the South Carolina Commission on Indigent Defense, who filed a <u>Johnson</u>[2] petition

for a writ of certiorari on Pernell's behalf that presented the following issue:

> Trial counsel erred in failing to strongly encourage petitioner to accept the state's
> fourteen-year plea offer because the state's evidence was overwhelming and where
> a fourteen-year sentence would have been less harsh than the aggregate fifty-year
> prison sentence handed down by the trial judge in the case.

(ECF No. 33-9.)  Pernell filed a *pro se* response to the <u>Johnson</u> petition in which he raised the

following issue:

> Did the PCR court err and make an unreasonable determination of the facts
> surrounding trial counsel's failure to move to suppress the drugs found in the vehicle
> where testimony of Marion County combined drug unit Lt. Rouse differ from PCR
> court's finding of facts regarding how the drugs was obtained from the search of the
> vehicle subsequent to arrest?

(ECF No. 33-10).  Pernell amended his *pro se* response in which he raised the following additional

issues:

> I.      Did appeal counsel err for failing to argue on appeal that the probative value
> of the distribution charge didn't outweigh its prejudicial effect where counsel
> objected to this at trial.

---

[2] <u>Johnson v. State</u>, 364 S.E. 2d 201 (S.C. 1988) (applying the factors in <u>Anders v. California</u>,
386 U.S. 738 (1967) to post-conviction appeals).  <u>Anders</u> requires that counsel who seeks to
withdraw after finding the "case to be wholly frivolous" following a "conscientious examination"
must submit a brief referencing anything in the record that arguably could support an appeal; furnish
a copy of that brief to the defendant; and after providing the defendant with an opportunity to
respond, the reviewing court must conduct a full examination of the proceedings to determine if
further review is merited.  <u>Anders</u>, 386 U.S. at 744.



II.     Did trial counsel err in not giving the court a limiting instruction on the distribution charge.

III.    Did trial counsel err in not preserving issue for appeal concerning testimony about marijuana.

(ECF No. 33-11.)  On March 11, 2014, the South Carolina Court of Appeals issued an order denying

Pernell's petition for a writ of certiorari.  (ECF No. 33-12.)  The remittitur was issued March 27,

2014.  (ECF No. 33-13.)  This action followed.

## FEDERAL HABEAS ISSUES

Pernell's federal Petition for a writ of habeas corpus raises the following issues:

**Ground One:** [A]s was noted at 9(f) supra of this petition, the petitioner will amend this issue at a later date[.]

**Ground Two: (A)**     Trial Counsel erred in failing to strongly encourage Petitioner to accept the State's fourteen year plea offer because the state's evidence was overwhelming and where a fourteen year sentence would have been less harsh than the aggregate fifty-year prison sentence handed down by the trial judge in the case[.]

**(B)**     Counsel was ineffective for failing to move to suppress the evidence (drugs) found in the vehicle[.]

**(C)**     Counsel was ineffective for failing to object to the Trial Court's erroneous Allen instruction to the jury that had a serious and injurious [e]ffect on the jury's verdict.

(Pet., ECF No. 1.)  Pernell also raised the following additional issues in his Amended Petition for

a writ of habeas corpus:

**Ground Three: (A)** The state trial and appellate court denied petitioner his Fourteenth Amendment right to a fair trial when the trial court allowed the jury to be subjected to [all] the evidence from a prior unadjudicated offense for which petitioner was not on trial for.  This error unduly prejudiced petitioner, as it resulted in a spill-over of prejudice.

**(B)** Petitioner was denied the effective assistance of appellate counsel when appellate counsel objected on one ground during trial and then argued a different ground on direct appeal.

**(C)** The state PCR court erred in failing to find counsel rendered ineffective assistance of counsel regarding the distribution charge.

**(D)** **(1).** The consecutive sentences handed down by the trial court are disproportionate to other sentences for same conduct.

   **(2).** Trial counsel was ineffective for failing to object to the consecutive sentences handed down by the trial court as the product of prejudice, partiality, disproportionate and cruel and unusual punishment compared to other sentences for same conduct.

   **(3).** Was counsel ineffective for failing to object to the consecutive sentences handed down by the trial court, since the offenses were the product of a continuous course of conduct, and should have been considered as one offense for sentencing purposes.

(Am. Pet., ECF No. 15) (errors and omissions in original).

## DISCUSSION

**A.** **Summary Judgment Standard**

  Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary



judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322. Further, while the federal court is charged with liberally construing a petition filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**B.     Habeas Corpus Standard of Review**

In accordance with the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), claims adjudicated on the merits in a state court proceeding cannot be a basis for federal habeas corpus relief unless the decision was "contrary to, or involved an unreasonable application of clearly



established federal law as decided by the Supreme Court of the United States," or the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1), (2). When reviewing a state court's application of federal law, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams v. Taylor, 529 U.S. 362, 410 (2000); see also White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (describing an "unreasonable application" as "objectively unreasonable, not merely wrong" and that "even clear error will not suffice") (internal quotation marks and citation omitted); Harrington v. Richter, 562 U.S. 86, 100 (2011); Humphries v. Ozmint, 397 F.3d 206 (4th Cir. 2005); McHone v. Polk, 392 F.3d 691 (4th Cir. 2004). Moreover, state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington, 562 U.S. at 101 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)); see also White, 134 S. Ct. at 1702 (stating that " '[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement' ") (alteration in original) (quoting Harrington, 562 U.S. at 103). Under the AEDPA, a state court's decision "must be granted a deference and latitude that are not in operation" when the case is being considered on direct review. Harrington,

562 U.S. at 101.  Moreover, review of a state court decision under the AEDPA standard does not require an opinion from the state court explaining its reasoning.  See id. at 98 (finding that "[t]here is no text in [§ 2254] requiring a statement of reasons" by the state court).  If no explanation accompanies the state court's decision, a federal habeas petitioner must show that there was no reasonable basis for the state court to deny relief.  Id.  Pursuant to § 2254(d), a federal habeas court must (1) determine what arguments or theories supported or could have supported the state court's decision; and then (2) ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding of a prior decision of the United States Supreme Court.  Id. at 102. "If this standard is difficult to meet, that is because it was meant to be." Id.  Section 2254(d) codifies the view that habeas corpus is a " 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Id. at 102-03 (quoting Jackson v. Virginia, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).

## C.    Exhaustion Requirements

A habeas corpus petitioner may obtain relief in federal court only after he has exhausted his state court remedies.  28 U.S.C. § 2254(b)(1)(A).  "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997), abrogated on other grounds by United States v. Barnette, 644 F.3d 192 (4th Cir. 2011); see also In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases, 471 S.E.2d 454, 454 (S.C. 1990) (holding that "when the claim has been presented to the Court of Appeals or the Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies.").  To exhaust his available state court remedies, a petitioner

must "fairly present[] to the state court both the operative facts and the controlling legal principles associated with each claim." Longworth v. Ozmint, 377 F.3d 437, 448 (4th Cir. 2004) (internal quotation marks and citation omitted). Thus, a federal court may consider only those issues which have been properly presented to the state appellate courts with jurisdiction to decide them. Generally, a federal habeas court should not review the merits of claims that would be found to be procedurally defaulted (or barred) under independent and adequate state procedural rules. Lawrence v. Branker, 517 F.3d 700, 714 (4th Cir. 2008); Longworth, 377 F.3d 437; see also Coleman v. Thompson, 501 U.S. 722 (1991). For a procedurally defaulted claim to be properly considered by a federal habeas court, the petitioner must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750.

**D.      Summary Judgment Motion**

**1.      Ineffective Assistance of Counsel Generally**

A defendant has a constitutional right to the effective assistance of counsel. To demonstrate ineffective assistance of counsel, a petitioner must show, pursuant to the two-prong test enunciated in Strickland v. Washington, 466 U.S. 668 (1984), that (1) his counsel was deficient in his representation and (2) he was prejudiced as a result. Id. at 687; see also Williams, 529 U.S. at 391 (stating that "the Strickland test provides sufficient guidance for resolving virtually all ineffective-assistance-of-counsel claims"). To satisfy the first prong of Strickland, a petitioner must show that trial counsel's errors were so serious that his performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment to the United States Constitution. With regard to the second prong of Strickland, a petitioner "must show that there is a reasonable probability that,



but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

The United States Supreme Court has cautioned federal habeas courts to "guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d)." Harrington, 562 U.S. at 105. The Court observed that while "'[s]urmounting Strickland's high bar is never an easy task[,]' . . . [e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult." Id. (quoting Padilla v. Kentucky, 559 U.S. 356, 371 (2010)). The Court instructed that the standards created under Strickland and § 2254(d) are both "'highly deferential,' and when the two apply in tandem, review is 'doubly' so." Id. (citations omitted). Thus, when a federal habeas court reviews a state court's determination regarding an ineffective assistance of counsel claim, "[t]he question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id.

The Supreme Court has held that a decision containing a reasoned explanation is not required from the state court. As stated above, if no explanation accompanies the state court's decision, a federal habeas petitioner must show that there was no reasonable basis for the state court to deny relief. In the case at bar, this court has the benefit of the PCR court's written opinion, certiorari review of which was denied by the South Carolina Court of Appeals, which may provide reasons or theories that the appellate court could have relied upon in summarily denying Pernell's petition. Therefore, the court turns to the question whether the PCR court's order unreasonably misapplied federal law or was based on an unreasonable determination of the facts.

2.     **Ground Two (A)**

Pernell first asserts that trial counsel erred in failing to strongly encourage him to accept the State's fourteen-year plea offer because the state's evidence was overwhelming and a fourteen-year sentence would have been less harsh than the aggregate fifty-year prison sentence imposed by the trial judge in the case. (Pet., ECF No. 1-1 at 2.) Pernell argues that the state court's denial of this claim is contrary to and objectively unreasonable in light of Lafler v. Cooper, Hill v. Lockhart, and Strickland v. Washington. (Id. at 3.)

The Sixth Amendment right to the assistance of counsel during criminal proceedings extends to the plea-bargaining process. See Missouri v. Frye,132 S. Ct. 1399, 1405 (2012). The United States Supreme Court has held that "defendants are entitled to the effective assistance of competent counsel" during plea negotiations. Lafler v. Cooper, 132 S. Ct. 1376, 1384 (2012) (internal quotation marks omitted). As explained in Hill v. Lockhart, 474 U.S. 52, 57 (1985), the two-part test set forth in Strickland v. Washington, 466 U.S. 668 (1984), governs ineffective assistance claims involving the plea process. To establish deficient performance, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. Courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, 'in order to avoid the distorting effects of hindsight.' " Yarbrough v. Johnson, 520 F.3d 329, 337 (4th Cir. 2008) (quoting Strickland, 466 U.S. at 689). To show prejudice from ineffective assistance of counsel in a case involving a plea offer, petitioners must demonstrate a reasonable probability that (1) "they would have accepted the earlier plea offer had they been afforded effective assistance of counsel," and (2) "the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority

PJG

to exercise that discretion under state law." <u>Frye</u>, 132 S. Ct. at 1409; <u>accord</u> <u>Lafler</u>, 132 S. Ct. at 1385. To demonstrate a reasonable probability that he would have accepted a plea, a petitioner's testimony that he would have done so must be credible. <u>Merzbacher v. Shearin</u>, 706 F.3d 356, 366-67 (4th Cir. 2013).

The record shows that both Pernell and his trial counsel testified at the PCR hearing. Pernell testified that his attorney advised him not to accept the fourteen-year offer, but instead insisted that he should proceed to trial. (App. at 365, ECF No. 33-2 at 166.) By contrast, trial counsel testified that he discussed the fourteen-year offer with his client and advised Pernell to take the offer. (App. at 376-77, ECF No. 33-2 at 26-27.) The PCR court determined that counsel did not render deficient performance in regard to the plea offer. The PCR court stated:

> Counsel testified that he advised Applicant [Pernell] to take the offer but Applicant wanted to go to trial. Counsel testified that he wished he was forceful on the matter, but admits that the decision was Applicant's. Applicant presented no evidence that counsel's performance in advising Applicant on the decision of whether or not to plead guilty was deficient. This Court finds counsel did not render deficient performance in this regard. Ultimately, the decision was Applicant's and [the Court] finds that Counsel's testimony that he advised Applicant to take the offer is credible and that Applicant's testimony on the matter is not credible. Although Counsel and Applicant both wish in hindsight that Applicant took the offer, Applicant made an informed decision to proceed to trial.

(App. at 396-97, ECF No. 33-2 at 197-98.)

The PCR court found trial counsel's testimony credible and Pernell's testimony not credible. (<u>Id.</u>) The PCR court's factual determination regarding credibility is entitled to deference in this action. <u>Cagle v. Branker</u>, 520 F.3d 320, 324 (4th Cir. 2008) (citing § 2254(e)(1) (for a federal court to overturn a state court's credibility judgments, the state court's error must be stark and clear)); <u>see also</u> <u>Marshall v. Lonberger</u>, 459 U.S. 422, 434 (1983) ("28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the



state trial court, but not by them"). Pernell has not offered any additional evidence challenging the PCR court's credibility determination. Pernell cannot meet his burden of showing that the PCR court's credibility judgments represent "stark and clear" error. After reviewing the record, the court finds that Pernell cannot demonstrate that the PCR court unreasonably misapplied clearly established federal law as decided by the United States Supreme Court in rejecting this claim or that the PCR court made objectively unreasonable factual findings. See Williams, 529 U.S. at 410; 28 U.S.C. § 2254(d), (e)(1). Pernell cannot show "there was no reasonable basis" for the state court to deny relief. Harrington, 562 U.S. at 98. Thus, the respondent's motion for summary judgment should be granted as to Ground Two (A).

### 3.      Ground Two (B)

In his second claim, Pernell argues that trial counsel was ineffective for failing to move to suppress the evidence (drugs) found in the vehicle. (Pet., ECF No. 1-1 at 3.) Pernell asserts that the state court decision denying this claim was contrary to, and an unreasonable application of, Strickland v. Washington and Kimmelman v. Morrison. (Id. at 4.)

To establish ineffective assistance of counsel based on counsel's failure to raise a Fourth Amendment issue, petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced his defense. See Strickland, 466 U.S. at 687-92. To demonstrate prejudice, petitioner must show that: (1) the overlooked motion to suppress would have been meritorious, and (2) there is a reasonable probability that the jury would have reached a different verdict absent the excludable evidence. Kimmelman, 477 U.S. at 375. When a federal habeas court reviews a state court's determination regarding an ineffective assistance of counsel claim, "[t]he question is not whether counsel's actions were reasonable. The question is whether there is any



reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standards." <u>Harrington</u>, 131 S. Ct. at 788.

Trial counsel testified at the PCR hearing that he did not file the motion because he did not feel that there was a valid ground to file a motion to suppress. (App. at 379, ECF No. 33-2 at 180.) Counsel explained that the officer (Rouse) searched the vehicle after seeing a marijuana blunt in the ashtray. Counsel testified that he believed that the officer said that the leather shave bag was open and the drugs were visible through the window of the vehicle. (<u>Id.</u>) At trial, Agent Rouse testified that when he arrived to secure the vehicle, the vehicle door had been left open, and he could see a blunt of marijuana in the ashtray, which gave him cause to look further. (App. at 69, ECF No. 33-1 at 71.) Rouse stated that he went around to the driver's side and opened the door, where he found an open black pouch on the driver's side seat containing drugs and scales. (App. at 70, ECF No. 33-1 at 72.)

In rejecting Pernell's claim, the PCR court explained that counsel's performance was not deficient, nor was Pernell prejudiced, because the search was permissible under the plain view exception to the warrant requirement, and a suppression motion was unlikely to succeed. (App. at 397, ECF No. 33-2 at 198.) Citing to the trial transcript, the PCR court noted that the black bag in the front seat was open and the narcotics were in plain view of the officers. (<u>Id.</u>)

Based on the record, the court finds that Pernell cannot demonstrate that the PCR court unreasonably misapplied clearly established federal law as decided by the Supreme Court in rejecting this claim, or that the PCR court made objectively unreasonable factual findings. <u>See</u> <u>Williams</u>, 529 U.S. at 410; 28 U.S.C. § 2254(d), (e)(1). As observed by the <u>Harrington</u> court, "the pivotal question is whether the state court's application of the <u>Strickland</u> standard was unreasonable. This is different

from asking whether defense counsel's performance fell below <u>Strickland</u>'s standard." <u>Harrington</u>,

131 S. Ct. at 785. Because the state court reasonably determined that the motion to suppress would

not have succeeded, summary judgment should be granted as to Pernell's Ground Two (B).

**4.    Ground Two (C)**

Pernell next argues that trial counsel was ineffective for failing to object to the trial court's

erroneous <u>Allen</u> instruction to the jury that had a serious and injurious affect on the jury's verdict.

(Pet., ECF No. 1 at 4.) Respondent asserts that this ground was waived and abandoned by Pernell

at PCR and on appeal from denial of PCR. Pernell submits that the default is excused under

<u>Martinez v. Ryan</u>, 132 S. Ct. 1309 (2012), because PCR counsel was ineffective for failing to raise

this claim at the PCR hearing. (Petr.'s Resp. Opp'n Summ. J., ECF No. 49 at 14.)

Generally, any errors of PCR counsel cannot serve as a basis for cause to excuse a

petitioner's procedural default of his claims. <u>See</u> <u>Coleman</u>, 501 U.S. at 752. However, in <u>Martinez</u>

the United States Supreme Court established a "limited qualification" to the rule in <u>Coleman</u>.

<u>Martinez</u>, 132 S. Ct. at 1319. The <u>Martinez</u> Court held that inadequate assistance of counsel "at

initial-review collateral review proceedings may establish cause for a prisoner's procedural default

of a claim of ineffective assistance at trial." <u>Id.</u> at 1315. In describing its holding in <u>Martinez</u>, the

Supreme Court has stated that

> [w]e . . . read <u>Coleman</u> as containing an exception, allowing a federal habeas court
> to find "cause," thereby excusing a defendant's procedural default, where (1) the
> claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the
> "cause" consisted of there being "no counsel" or only "ineffective" counsel during
> the state collateral review proceeding; (3) the state collateral review proceeding was
> the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-
> counsel claim"; and (4) state law requires that an "ineffective assistance of trial
> counsel [claim] . . . be raised in an initial-review collateral proceeding."



Trevino v. Thaler, 133 S. Ct. 1911, 1918 (2013) (citing Martinez, 132 S. Ct. at 1318-19, 1320-21);
see also Sexton v. Cozner, 679 F.3d 1150, 1159 (9th Cir. 2012) (summarizing the Martinez test to
require the following: "a reviewing court must determine whether the petitioner's attorney in the
first collateral proceeding was ineffective . . ., whether the petitioner's claim of ineffective assistance
of trial counsel is substantial, and whether there is prejudice").

　　　　Additionally, to have the procedural default of Pernell's claim excused, he must "show that
[PCR] counsel's representation during the post-conviction proceeding was objectively unreasonable,
and that, but for his errors, there is a reasonable probability that Petitioner would have received relief
on a claim of ineffective assistance of trial counsel in the state post-conviction matter." Sexton, 679
F.3d at 1157; see also Williams, 529 U.S. at 391 (stating that "the Strickland test provides sufficient
guidance for resolving virtually all ineffective assistance-of-counsel claims"); Strickland, 466 U.S.
at 687 (stating to demonstrate ineffective assistance of counsel, a petitioner must show that (1) his
counsel was deficient in his representation, *i.e.* that counsel's errors were so serious that his
performance was below the objective standard of reasonableness guaranteed by the Sixth
Amendment to the United States Constitution and (2) he was prejudiced as a result).  As discussed
below, after a careful review of the parties' briefs and the entire record, the court finds that Pernell's
Allen claim does not satisfy the limited qualification set forth in Martinez.  Further, the claim would
be found to be procedurally defaulted (or barred) under independent and adequate state procedural
rules if Pernell attempted to raise the claim at this time.  See Lawrence, 517 F.3d at 714; Longworth,
377 F.3d 437.

　　　　Jury deliberations began in Pernell's trial at 3:48 p.m. on Wednesday, February 28, 2007.
(App. at 303, ECF No. 22-3 at 303.)  Upon receiving a note that the jury had not reached a



unanimous decision at 6:02 p.m., the jury was called back to the courtroom.  The court instructed

the jury as follows:

Now, as I indicated before, I would want you to continue deliberations.

You know, ah, when, ah, the jury fails to reach a verdict, it doesn't[] mean that anybody wins.  It means that everybody loses.

If this the State of South Carolina is entitled to a verdict, they're entitled to one now, not next week or next month.

Equally, the defendant is entitled to one, same thing, not next week, next month.[]

[Reading from the note from the jury]

["]Your Honor, if this case were unable to reach a verdict,["] and you have not told me that at this time.  You are continuing to deliberate but it would be an unfortunate thing.

What would happen is that I'd have to bring in twelve folks just like you.  The same lawyers would be here.  The same questions would be asked.  The same witnesses would be presented, and twelve people would have to do what this distinguished jury is unable to do.

And I would conclude that I can't find twelve people more honest, more capable, more willing to find the truth, and so I'm going to tell you.  Go ahead and deliberate until we reach a unanimous verdict if at all possible.

Now having said that, I would not want anybody to give up his heartfelt - - his or her heartfelt opinion.  That's not our system but our system never projected that our jury verdict would be one or two people saying, "This is what I'm going to do and I'm not going to do anything else until everybody agrees with me."

And so we say to jurors who are still deliberating.  If a lot of you think one way, then the minority ought to listen very carefully and determine whether or not their position is reasonable.

On the same note, then the majority of your if there be a majority should listen to the minority's view's with the same idea when considering their verdict, and if at all possible, reach a unanimous verdict.

As I said, this case has taken a day and a half.  There's a lot of evidence for your consideration.  There's no way in the world that a good jury can syphon through all the testimony and evidence that has been presented in an hour or two, and I would understand that.

Nobody has told me yet that we have a hung jury, and for that reason, I'm going to recess now.  Ask you to come back at 9:30 in the morning.  Be in the jury room.  Do not begin your deliberations until I call you out for further instructions.

We are here with several other matters all day tomorrow.  Be back Friday.  So you are not inconveniencing us because as you deliberate, we got a lot of other things to do not connected with this case.

But this is an important case.  It's important to the people of Marion County.  Equally important, it's important to this defendant.



And so I'm going to ask you twelve good folks to resolve these issues in accordance with your oath and in accordance with your view of the facts as it applies to the law of this case.

So, remember my admonitions, now. Do not discuss this case with anyone. Let no one discuss it with you. Make no independent inquiry. Come back here at 9:30 in the morning with an open, fresh mind.

I've found from twenty-three years on the bench that that quite happens, that people are unable to reach a unanimity at night but they go home and sleep on it and come back with a fresh outlook, and, generally, in our system, we get a verdict. Otherwise, our system fails. It's an unfortunate thing. The system just doesn't[] work.

So, I want twelve good folks to come back here tomorrow with an open mind and nobody to give up their heartfelt opinions and let's reach a unanimous verdict.

(App. at 307-10, ECF No. 33-2 at 108-11.)

The jury returned to the courtroom at 9:40 a.m. the following morning and received the

following instruction:

Good morning, Madame Foreman, ladies and gentlemen. Delighted to see everybody back here again today to resume your deliberations.

I continue to express all of you my deepest thanks for your services in this case.

You know, none of you asked to come here this week. Certainly, none of you asked to be on this jury but having done that under your oath, now, you are required to perform services as required by law paying strict adherence to my law as I have given it to you understanding that you are the finders of the facts and you will apply those facts to the law and thereafter reach a verdict.

Last night prior to breaking for the evening, I made some preliminary remarks concerning what happens when we have a mistrial which is, indeed, an unfortunate thing for the system, jurisprudence for the State of South Carolina and the folks of Marion County and for the defendant.

And, so, let me give you, now, a detailed discussion with results to these issues.

And I say to you in all sincerity that we want this case resolved, and we're going to be here all day today and all day today [*sic*] but we want it resolved, and it should be resolved in fairness to the State and in fairness to the defendant.

Now, the only mode provided by our law for deciding questions of fact is by the verdict of a jury just exactly like you twelve. In most all cases absolute certainty cannot be obtained or effected but when a matter is in dispute, it isn't always easy for even two people to agree initially.

So, when twelve people must agree, it becomes correspondingly more difficult.



I tell you that it is very unusual for a jury to go out and to immediately or quickly return with a verdict. That is what would happen if a jury was in agreement to begin with.

Now, I tell you, too, at the same time, we usually get a verdict. And, so, while it is normal as in this case for jurors to disagree at first, we nevertheless, get a verdict after all the jury has laid aside all extraneous or outside matters and have determined to try this case on its merits and on the basis of the law and evidence in this case, not from some outside situation but on the law and the evidence in this case.

The State's entitled to that. The people of Marion County is entitled to that and this defendant is entitled to that.

It has been said that jury service is perhaps the highest service a citizen can perform for his or her country or state during peacetime, and I certainly agree with that but I tell you, however, a juror does not render good service who arbitrarily says, "I know what I want to do in this, and if and when everybody agrees with me, then we will write a verdict, and we will not write a verdict until that time."

It was never intended that the verdict of the jury should be the verdict of any one person. That's not our procedure.

At the same time I tell you that every juror has a right to his or her own opinion and he or she should not give up that right merely for the purpose of being in agreement. However, the verdict of the jury is the collective reasoning of all jurors, of all twelve of you, and that is why we have a jury.

It is the duty of each juror to tell the other how he or she feels and why he or she feels that way since the verdict of the jury is the result of collective reasoning. It can be said that a verdict is the result of give and take.

With this in mind, Madame Foreman, and ladies and gentlemen, I tell you that each of you - - I tell you - - I tell you that if much larger number of your panel are in favor of one position, I'm not interested in what it is, a dissenting jury or juror should consider whether his or her position is reasonable which makes no impression upon the minds of the majority.

In other words, *if the majority of you are one position, the minority ought to seriously ask themselves why they can reasonably doubt the correctness of the judgment of the majority*.

Although the verdict to which a jury agrees must, of course, be his or her own verdict, the result of his or her own convictions and not merely an acquiescence in the conclusion of his or her fellow jurors, yet in order to bring twelve minds to a unanimous result, you must examine the questions submitted to you with candor and with proper regard, too, and respect for the opinions of each other.

You should also consider that you were selected in the same manner and from the same source that any future jury will be, and there is certainly no reason for me to suppose that this case will ever be submitted to twelve people more intelligent, more impartial and competent than you are or that more clear evidence will be produced on one side or the other.



In other words, ladies and gentlemen, a mistrial in a case is an unfortunate thing. If you do not agree on a verdict, it does not mean that anybody wins. It simply means that at some future time, and it will be next week, that I will try this case with another jury sitting where you are now selected in the same way. The same participants will come, and the same lawyers will ask basically the same questions and probably get basically the same answers, and we will go through this whole process again but, fortunately, this is a two week term of court, and this case is going to be resolved today or tomorrow or it will be tried again Monday morning here in Marion County, and I tell you that to emphasize that nobody wins in a mistrial.

Now, in conclusion, I say to you that if the State of South Carolina and the people of Marion County are entitled to a verdict, they are entitled to it today, not tomorrow and not next week.

If this defendant is entitled to a verdict of not guilty at your hands, he's entitled to it today, not next week, next month.

So, I continue to emphasize to you as strong as I can. The only thing that will happen in that event is that next Monday morning I will go through the same voir dire. I will ask everybody do they have any interest in the case. I will ask everybody did anybody even know any of the participants, and all of you have answered to me no.

All of you have said that you have no interest in the case, no bias in the case. You've said to me that you have no friends to reward or enemies to punish, and I know for you to be good, independent, fair-minded people.

Now - - now, of course, as I indicated yesterday, this case took approximately two days and I received a message that at that time you were still deliberating, ah, only in two hours, and, obviously, two hours to go through a file like this with the evidence that was presented as finders of the fact, that's not nearly sufficient time for you to reach unanimity either for not guilty or guilty.

And, of course having said that, I'm certainly of the opinion that there has not been sufficient deliberation. So with a good conscience I tell you that we're going to be a considerable more time to see if these issues, ah, can be resolved.

As I said to you, we're here with many other matters today and tomorrow. I'll be here at all times, Madame Foreman. If there's any questions of law that concern you or any member of your jury, please write that question down because I want this jury to be clear as to what the law is.

Now, I want you to take the facts as you find them to be but if there's any question about the law, now I want to clear it up. I want everybody to understand that.

Now, I, therefore, humbly as presiding officer of this Court here in Marion County, I beseech you to return to your deliberations with the hope that we can arrive at a verdict sometime today or tomorrow.

And as I say to you and emphasize again as strong as I can, I would not ask anybody to give up their heartfelt opinions about any issue of the case. That would be improper.



But I also tell you as strong as I can that if this case is not resolved this week, we're going to be going through the same procedure next week, and I want everybody to understand that. That means that nobody wins but everybody loses.

So, please, Madame Foreman, go back and resume your deliberations. If there's any questions anybody has, please let me know so that I can clarify it for you.

You may now begin your deliberations.

Thank you.

If you need any help or anything, now, in the event we need lunch, I'll be glad to order lunch for you, and we'll have lunch at the County's expense. Okay? Supper, too.

(App. at 312-18, ECF No. 33-2 at 113-19) (emphasis added). The jury resumed deliberations, requested and received further instructions on the law, and returned with a unanimous verdict at 11:44 a.m. (App. at 327, ECF No. 33-2 at 128.)

Pernell argues that counsel was ineffective in failing to object to the Allen instruction. Specifically, Pernell argues that the italicized portion of the above instruction was coercive. (Petr.'s Resp. Opp'n Summ. J., ECF No. 49 at 16.) Pernell's claim does not warrant relief. An Allen instruction is a jury instruction that a trial judge may issue to a deadlocked jury in order to encourage the jury to reach a unanimous verdict. See Allen v. United States, 164 U.S. 492, 501-02 (1896). The Allen instruction is generally used "to inform jurors that there is no reason to believe another jury would be better able to decide the case, that it is important that a unanimous verdict be reached, and that jurors should consider the opinions of jurors who favor a different result." United States v. Rosado, 452 F.App'x 255, 256 (4th Cir. 2011). The Supreme Court of the United States has continued to affirm the constitutionality of the use of Allen instructions, unless "in its context and under all the circumstances the judge's statement" had a coercive effect on the jury. Jenkins v. United States, 380 U.S. 445, 446 (1965). Relevant factors in determining whether an Allen instruction is coercive include:

the charge in its entirety and in context; suggestions or threats that the jury would be kept until unanimity is reached; suggestions or commands that the jury must agree; indications that the trial court knew the numerical division of the jury; indications that the charge was directed at the minority; the length of deliberations following the charge; the total length of deliberations; whether the jury requested additional instruction; and other indications of coercion.

Tucker v. Catoe, 221 F.3d 600, 611 (4th Cir. 2000).

The Allen instruction given to Pernell's jury stated that it was permissible for the jury to disagree and the court did not command the jury reach an agreement. The record indicates that the court did not know the numerical division of the jury. Reviewed in its totality, the charge shows that the court encouraged all jurors, not just those who ended up in the minority, to reexamine their views, and instructed jurors not to surrender their individual conviction just because of another juror. Reading the February 28 and March 1 instructions as a whole shows no indication of coercion. Consequently, Pernell's attorney was not unreasonable in failing to object to the Allen instruction, so Pernell cannot show that this was a substantial claim that PCR counsel unreasonable failed to raise. Accordingly, he cannot show cause to excuse the procedural default; thus, the claim is barred from review.

5.    **Ground Three(A), (B), & (C)[3]**

In his Amended Petition, Pernell argues that "the state trial and appellate court denied him his Fourteenth Amendment right to a fair trial when the trial court allowed the jury to be subjected to [all] the evidence from a prior unadjudicated offense [distribution] for which petitioner was not on trial [during the trafficking trial]. This error unduly prejudiced petitioner, as it resulted in a

---

[3] Pernell clarifies in his Response in Opposition to Respondent's Motion for Summary Judgment that amended petition Ground Three is original petition Ground One. (Petr.'s Resp. Opp'n Summ. J., ECF No. 49 at 13.)



spill-over of prejudice." (Am. Pet. Ground Three (A), ECF No. 15 at 4.) Further, Pernell asserts that he was denied effective assistance of counsel when counsel objected to the introduction of distribution evidence at trial, but improperly argued the matter on direct appeal. (Am. Pet. Ground Three (B), ECF No. 15 at 8.) Last, Pernell submits that the state PCR court erred in failing to find counsel rendered ineffective assistance of counsel regarding the distribution charge. (Am. Pet. Ground Three (C), ECF No. 15 at 9.)

Pernell was indicted in November 2006 in Marion County on a multiple count indictment for (1) distribution of cocaine base, (2) trafficking in cocaine, (3) possession of cocaine with intent to distribute within proximity of a school or park, (4) trafficking in cocaine base, and (5) possession of cocaine base with intent to distribute within proximity of a school or park (2006-GS-33-297). (ECF No. 33-3 at 54-6.) Pernell was tried by jury on Counts Two through Five. Count 1 was dismissed with leave to restore. At trial, over counsel's objection, evidence that Pernell sold crack cocaine to a confidential informant was admitted. (App. at 118-24, ECF No. 33-2 at 120-26.) Pernell was found guilty of Count 2 and Count 4—trafficking in cocaine and trafficking in cocaine base. (App. at 327-28, ECF No. 33-2 at 128-29.)

On appeal, Pernell's claim that the trial court erred in allowing testimony and evidence concerning a distribution charge was denied. (ECF No. 33-7 at 5-6.) Pernell raised a claim of ineffective assistance of counsel in his PCR application. (App. at 345-50, ECF No. 33-2 at 146-51.) At the PCR hearing, Pernell alleged that counsel was ineffective for failing to argue that evidence of the distribution could not be admitted because its prejudicial value outweighed the probative value of the evidence. (App. at 361, ECF No. 33-2 at 162.) The PCR court denied the claim, finding that counsel's performance was not deficient, nor was Pernell prejudiced as "[c]ounsel vigorously sought

PJG

suppression, but the evidence was obviously admissible as *res gestae* and highly probative where the informant was able to identify the Crown Victoria and the seized black bag from the prior transaction, and where immediately upon the first transaction, [Pernell] and the informant arranged the proposed transaction at Imperial Motel." (App. at 398, ECF No. 33-2 at 199.) The PCR court explained that counsel unsuccessfully moved to suppress evidence of the distribution in a pretrial motion, and counsel objected at trial to the evidence of the distribution change being admitted. Further, the PCR court noted that counsel challenged the state court evidentiary ruling on appeal, but the appellate court found the evidence admissible as *res gestae* of the trafficking offenses. (Id.)

In his amended *pro se* response to the <u>Johnson</u> petition, Pernell argued that appellate counsel erred for failing to argue on appeal that the probative value of the distribution charge did not outweigh its prejudicial effect where counsel objected to this at trial. (ECF No. 33-11 at 3.) The South Carolina Court of Appeals denied Pernell's petition for a writ of certiorari. (ECF No. 33-12 at 1.)

To the extent Pernell's Ground Three challenges state evidentiary rulings, federal habeas relief is not available. The South Carolina Court of Appeals rejected Pernell's distribution argument pursuant to the South Carolina Rules of Evidence and South Carolina state law. Accordingly, this determination by the Court of Appeals ultimately involved a question of state evidentiary law. "It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991). Furthermore, "in considering federal habeas corpus issues involving state evidentiary rulings, 'we do not sit to review the admissibility of evidence under state law unless erroneous evidentiary rulings were so extreme as to result in a denial of a constitutionally fair proceeding.' " <u>Barbe v. McBride</u>, 521 F.3d 443, 452 (4th Cir. 2008)



(quoting <u>Burket v. Angelone</u>, 208 F.3d 172, 186 (4th Cir. 2000)).  Pernell's argument that the state trial and appellate court misapplied state law does not assert constitutional error; thus, federal habeas relief is not available.

Pernell's Ground Three assertion that the PCR court erred in failing to find counsel rendered ineffective assistance of counsel regarding the distribution charge is without merit.  Upon a review of the record, the court finds that Pernell cannot demonstrate that the PCR court unreasonably misapplied clearly established federal law as decided by the Supreme Court in rejecting his claim of ineffective assistance of counsel or that the PCR court made objectively unreasonable factual findings.  <u>See Williams</u>, 529 U.S. at 410; 28 U.S.C. § 2254(d), (e)(1).  As observed by the <u>Harrington</u> court, "[t]he pivotal question is whether the state court's application of the <u>Strickland</u> standard was unreasonable.  This is different from asking whether defense counsel's performance fell below <u>Strickland</u>'s standard." <u>Harrington</u>, 131 S. Ct. at 785.  Pernell has failed to demonstrate that the PCR court erred in determining that trial counsel was not deficient, nor was Pernell prejudiced by counsel's actions surrounding the distribution evidence.  The record clearly shows that trial counsel filed a motion in limine to limit the admission of the distribution evidence, and again objected to its admission during trial.  (App. at 47-48, 118- 24, ECF No. 33-2 at 49-50, 120-26.)  Counsel further raised the issue on appeal.  (ECF No. 33-7 at 5-6.)  Accordingly, Pernell has not shown that the PCR court's analysis of this issue misapplied clearly established federal law, or that the decision was unreasonable.  <u>See Williams</u>, 529 U.S. at 410.  Thus, his claim fails.

### 6.    Ground Three (D)

In the final ground set forth in the Amended Petition, Pernell argues (1) the consecutive sentences imposed by the trial court are disproportionate to other sentences for same conduct;

(2) trial counsel was ineffective for failing to object to the consecutive sentences handed down by the trial court as the product of prejudice, partiality, disproportionate and cruel and unusual punishment compared to other sentences for same conduct; and (3) counsel was ineffective for failing to object to the consecutive sentences handed down by the trial court, since the offenses were the product of a continuous course of conduct, and should have been considered as one offense for sentencing purposes. (Am. Pet., ECF No. 15 at 11.) The respondent asserts that Pernell's Ground Three (D) claims are procedurally barred. Pernell disagrees, stating that Ground Three is "reviewable through the lens of ineffective assistance of counsel." (Petr.'s Resp. Opp'n Summ. J., ECF No. 49 at 26.) Pernell notes that any of the grounds raised in his amended petition that have been procedurally defaulted are excused in accordance with Martinez v. Ryan, as all grounds raised in his Amended Petition are substantial. (Am. Pet., ECF No. 15 at 12.) After reviewing the parties' briefs, and the entire record, the court concludes that it is clear that Pernell cannot show that he is entitled to relief under Martinez.

As discussed regarding Ground Two (C) above, to establish cause to overcome a procedural default under Martinez, Pernell must demonstrate (1) that his PCR counsel was ineffective under Strickland and (2) that "the underlying ineffective-assistance-of-trial-counsel claim is a substantial one." Martinez, 132 S. Ct. at 1318. Therefore, Pernell must show that PCR counsel's failure to raise this issue at PCR was "objectively unreasonable, and that, but for his errors, there is a reasonable probability that Petitioner would have received relief on a claim of ineffective assistance of trial counsel in the state post-conviction matter." Sexton v. Cozner, 679 F.3d 1150, 1157 (9th Cir. 2012); see also Williams, 529 U.S. at 391 (2000). Pernell cannot meet this showing.

PJG

As previously noted, Pernell was indicted on a multiple count indictment for (1) distribution of cocaine base, (2) trafficking in cocaine, (3) possession of cocaine with intent to distribute within proximity of a school or park, (4) trafficking in cocaine base, and (5) possession of cocaine base with intent to distribute within proximity of a school or park (2006-GS-33-297). (ECF No. 33-3 at 54-6.) Pernell was tried by jury on Counts Two through Five and found guilty of Count 2 and Count 4—trafficking in cocaine of more than 100 grams, and trafficking in cocaine base of more than 28 grams. (App. at 327-28, ECF No. 33-2 at 128-29.) At sentencing, trial counsel requested that the court impose concurrent sentences. (App. at 339, ECF No. 33-2 at 140.) The court noted Pernell's two prior drug violations, including a 1999 trafficking in cocaine conviction, and subsequently sentenced Pernell to twenty-five years' imprisonment for each count of trafficking, the sentences to run consecutively. (App. at 340-42 ECF No. 33-2 at 141-43.)

Trial counsel's representation of Pernell continued through direct appeal. Counsel challenged the state court's imposition of consecutive sentences on appeal. Specifically, counsel alleged that the trial court erred in sentencing Pernell to consecutive twenty-five year sentences for drug violations that occurred simultaneously, and in failing to grant the motion to reconsider the sentence. (ECF No. 33-5 at 14.) The South Carolina Court of Appeals denied relief, stating:

> A trial judge is granted broad discretion in determining a sentence. State v. Franklin, 267 S.C. 240, 246, 226 S.E.2d 896, 898 (1976); State v. Barton, 325 S.C. 522, 532, 481 S.E.2d 439, 444 (Ct. App. 1997). The scope of the trial court's ability to inquire about information on sentencing is nearly "unlimited either as to the kind of information he may consider, or the source from which it may come." Franklin, 267 S.C. at 246, 226 S.E.2d at 898. "Likewise whether multiple sentences should run consecutively or concurrently is a matter left to the sound discretion of the trial judge." Barton, 325 S.C. at 532, 481 S.E.2d at 444. Moreover, absent "partiality, prejudice, oppression or corrupt motive, this Court lacks jurisdiction to disturb a sentence that is within the limit prescribed by statute." Id.; accord Stockton v. Leeke, 269 S.C. 459, 462, 237 S.E.2d 896, 897 (1997); Franklin, 267 S.C. at 246, 226 S.E.2d at 898.



> The trial court considered the circumstances of this case and determined the sentences should run consecutively. The record does not support, and Appellant does not allege, the sentence was the product of any partiality, prejudice, oppression, or corrupt motive. Accordingly, while the sentence imposed is admittedly substantial, in the absence of an abuse of discretion, this Court is without authority to disturb it.

(State v. Pernell, Op. No. 2009-UP-394 (S.C. Ct. App. July 20, 2009), ECF No. 33-7 at 8.)

Pernell's Ground Three (D)(1) contention that "the consecutive sentences handed down by the trial court are disproportionate to other sentences for same conduct" does not raise a cognizable federal claim. As outlined in Ground Three above, this court does not sit to reexamine state-court determinations on state-law questions. Estelle, 502 U.S. at 67-68. Habeas relief is only available to a state prisoner if "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254. Consequently, Ground Three (D)(1) is barred from habeas review.

Pernell's Ground Three (D)(2) suggests that PCR counsel was ineffective for failing to raise a claim that trial counsel was ineffective for failing to argue that his consecutive sentences were the product of "prejudice, partiality, disproportionate and cruel and unusual punishment compared to other sentences for same conduct." (Am. Pet., ECF No. 15 at 11.) The court finds that Ground Three (D)(2) is procedurally defaulted and Martinez does not excuse the procedural default because Pernell cannot demonstrate that this claim is substantial.

The twenty-five year sentences imposed by the state court were within the limits permitted by law. In fact, the court imposed the mandatory minimum sentence on one count. (ECF No. 33-2 at 143.) As the South Carolina Court of Appeals observed, a trial judge is given wide discretion in determining what sentence should be imposed. State v. Franklin, 226 S.E.2d 896 (S.C. 1976). Further, whether multiple sentences should run consecutively or concurrently is a matter left to the sound discretion of the trial judge. Legare v. State, 509 S.E.2d 472 (S.C. 1998) (trial court had

PJG

discretion to impose consecutive sentences for armed robbery, assault and battery with intent to kill, and attempted armed robbery).  Moreover, the United States Court of Appeals for the Fourth Circuit has held that proportionality review "is not available for any sentence less than life imprisonment without the possibility of parole."  United States v. Malloy, 568 F.3d 166, 180 (4th Cir. 2009) (quoting United States v. Hong, 242 F.3d 528, 532 (4th Cir. 2001)); see also United States v. Polk, 905 F.2d 54, 55 (4th Cir. 1990).  Additionally, Pernell has not shown that his aggregate fifty-year sentence is disproportionate in light of his prior drug offenses, including a prior trafficking conviction.  Ewing v. California, 538 U.S. 11, 29-30 (2003) (state-court sentence of twenty-five years to life for recidivist did not violate Eighth Amendment).

Pernell's final challenge is procedurally barred because it was not presented to the state courts.  Ground Three D(3) argues that counsel was ineffective for failing to object to the consecutive sentences handed down by the trial court, since the offenses were the product of a continuous course of conduct pursuant to South Carolina Code Ann. § 17-25-50 and should have been considered as one offense for sentencing purposes.  Pernell's final claim fails.  Pernell cannot demonstrate this claim is substantial; thus, he cannot use Martinez to overcome the procedural bar.  First, it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  Estelle, 502 U.S. at 67-68.  Second, the court notes that trial counsel advocated for the court to impose the sentences concurrently, and albeit unsuccessfully, counsel challenged the imposition of consecutive sentences on appeal.  (App. at 339, ECF No. 33-2 at 140, 33-5 at 14.)  As noted above, Pernell was convicted of trafficking in cocaine greater than 100 grams, and trafficking in crack cocaine greater than 28 grams.  Pernell had been convicted of two prior drug offenses.  The trial judge had discretion whether to run the sentences consecutively or concurrently.  Legare, 509



S.E.2d at 476.   Accordingly, Pernell has not established cause and prejudice to overcome the procedural default pursuant to <u>Martinez</u>, 132 S. Ct. at 1318-19.  Therefore, Pernell's final claim fails.

**RECOMMENDATION**

For the foregoing reasons, the court recommends that the respondent's motion for summary judgment (ECF No. 32) be granted and Pernell's Petition, as amended, be denied.

Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

December 11, 2015
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

### Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"   Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).